UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SIGFREDO PRIETO,

    Plaintiff,

v.                                        Case No. 8:20-cv-03116-JSM-AAS

PINTO TRANSPORT, INC.,

    Defendants.
_____/

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS**

This Settlement Agreement and Mutual Release of Claims (the "Agreement") is entered into by and between SIGFREDO PRIETO ("Plaintiff") and PINTO TRANSPORT, INC. ("Defendant"), collectively (the "Parties").

WHEREAS, Plaintiff worked as a truck driver for the Defendant;

WHEREAS, Plaintiff filed a civil action against Defendant in the District Court of Florida, seeking redress for alleged violations of the Fair Standards Labor Act ("FLSA"), Case Number 8:20-cv-03116-JSM-AAS;

WHEREAS, Defendant denies all allegations in the Lawsuit and any liability and/or any other wrongdoing in respect to Plaintiff; and

WHEREAS, Plaintiff and Defendant wish to avoid litigation and settle and resolve the controversy between them amicably and expeditiously;

NOW, THEREFORE, in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby

STIPULATED AND AGREED by and between the undersigned parties that the above-entitled matter is resolved as follows:

1. RECITALS: The foregoing recitals are true and correct and are incorporated below as if fully set forth therein.

2. GENERAL RELEASE: In exchange for delivery of a separately negotiated consideration amount of Five Hundred Dollars ($500.00) paid by Defendant to Plaintiff, Plaintiff on Plaintiff's own behalf and on behalf of Plaintiff's heirs, executors, administrators, legal representatives, successors, assigns or others acting on Plaintiff's behalf, hereby knowingly, willingly, and voluntarily waives and releases Pinto Transport, Inc., and its respective present, past, and future affiliates, predecessors, successors, parents, subsidiaries, assigns, insurers, and each and every one of their respective owners, officers, directors, employees and agents (collectively referred to as "Released Parties"), from any and all duties, claims, rights, complaints, charges, damages, costs, expenses, attorneys' fees, debts, demands, actions, obligations, and liabilities, of any and every kind, nature, and character whatsoever, whether known or unknown, whether arising out of contract, tort, statute, settlement, equity or otherwise, whether fixed, liquidated, or contingent which Plaintiff has, ever had, or may in the future claim to have against the Released Parties based on any act or omission concerning

any matter, cause, or thing before the dates of this Agreement and up to the time of the signing of this Agreement by all parties, including but not limited to, those directly or indirectly arising out of, or otherwise relating to Plaintiff's former business relationship with Pinto Transport, Inc., or separation from Pinto Transport, Inc..

The scope of this release shall include all claims that could be asserted against any of the Released Parties and are permitted to be released by law, including without limitation, any alleged violation of any federal, state or local laws, rules or regulations, and all amendments thereto, under Title VII of the Civil Rights Acts of 1866, 1964, and 1991; Age Discrimination in Employment Act (ADEA); Sections 1981 through 1988 of Title 42 of the United States Code; the Lilly Ledbetter Fair Pay Act of 2009; the Civil Rights Act of 1866; Executive Order 11246; 42 U.S.C. § 1981; the Complainant Retirement Income Security Act of 1974 (ERISA); the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA); the Health Insurance Portability and Accountability Act of 1996 (HIPAA); the Fair Labor Standards Act of 1938; the Equal Pay Act of 1963; the Rehabilitation Act of 1973; the Genetic Information Nondiscrimination Act of 2008 (GINA); the Americans With Disabilities Act of 1990 (ADA); the Family and Medical Leave Act of 1993 (FMLA), including without limitation any claims for liquidated damages; the National Labor Relations Act (NLRA); the Worker Adjustment and Retraining Notification Act (WARN); the Fair Credit Reporting Act including, but not limited to, 15 U.S.C. § 1681, *et. seq*; the Rehabilitation Act of 1973; the Uniformed Services Employment and Reemployment Rights Act; the Sarbanes-Oxley Act including the Corporate and Criminal Fraud

Accountability Act, 18 USC § 1514A; any federal or state False Claims Act (including, but not limited to, 31 U.S.C. § 3729, et seq. and § 68.081, et seq., Florida Statutes); the Coronavirus Aid, Relief, and Economic Security Act (CARES Act); any employment law of the State of Florida, including, but not limited to, all claims under the Florida common law, statutes, and Constitution, Chapter 447, Florida Statutes; the Florida Civil Rights Act of 1992, as amended (including, without limitation, sex, gender, age, disability, and retaliation); Florida's general labor regulations (including but not limited to wage and retaliation, private whistleblower and any other claims set out in Chapter 448, Part 1, Fla. Stat.); retaliation prohibitions under Florida Workers' Compensation Act, as amended, (Fla. Stat. §440.205); Florida's Wage Discrimination Law (Fla. Stat. §448.07); Florida's Equal Pay Law (Fla. Stat. §725.07 and Fla. Stat. §448.07); Florida's Minimum Wage Act (Fla. Stat. §448.110); retaliation provisions under the private whistleblower law (Fla. Stat. §448.101 et seq.); retaliation provisions under the Public Whistleblower Act (Fla. Stat. §112.3187, et. al.); and any other state laws (statutes, common law, constitutional) regulations or local ordinances or codes, addressing in any manner nondiscrimination, all forms of retaliation, or human rights, and/or public policy, contract (written, implied or oral), or tort (including by example: negligence, negligent supervision, retention, hiring, or training, invasion of privacy, false imprisonment, defamation, libel, slander, fraud, outrageous conduct, intentional or negligent infliction of emotional distress, tortious interference, assault, and battery), claims that any of the other Released Parties treated or dealt with Plaintiff unfairly or in bad faith, claims based on any other equitable

basis or action, claims for any of the Released Parties providing any and all information that may be requested by Florida's reemployment agency in connection with any application for reemployment assistance (a/k/a unemployment) benefits by Plaintiff, any claims on account of, arising out of or in any way connected with Plaintiff's employment with the Company or Plaintiff's separation of that employment; any claims relating to the conduct of any of the Released Parties; and any basis for recovering damages, costs, fees, or other expenses including attorneys' fees incurred in these matters; or having any bearing whatsoever on the terms and conditions and/or cessation of Plaintiff's employment.  Further, Plaintiff represents that Plaintiff did not have and does not have any claims against the Company for age-based discrimination. Plaintiff also represents and certifies that Plaintiff has received full payment for all work performed for Pinto Transport, Inc., including, if applicable, all salary, hourly wages, overtime hours, bonuses and vacation pay, and has received all benefits and leaves available or requested.

Plaintiff does hereby release any claim(s) for workers' compensation (except for claims of retaliation, which are specifically released) or reemployment assistance (f/k/a unemployment compensation) benefits to which Plaintiff may or may not be entitled to under Florida's law.  Plaintiff affirms that while Plaintiff was employed with Pinto Transport, Inc., Plaintiff had no known and unreported workplace injuries or occupational diseases. In addition, Plaintiff affirms that Plaintiff has not been asked to provide or produce any genetic information and that no employment decisions were

www.spirelawfirm.com
Employment Attorneys

based on any genetic information. Plaintiff warrants that Plaintiff is not a Medicare beneficiary as of the date of the foregoing release and waiver and therefore no conditional payments have been made by Medicare.

Plaintiff understands that Pinto Transport, Inc., has or will timely and accurately respond to any requests for information from the Florida reemployment assistance agency. Plaintiff acknowledges that Plaintiff understands and agrees that the Florida reemployment assistance agency is the entity that determines eligibility for benefits and, in accordance with Florida law, Pinto Transport, Inc., must truthfully and completely provide information regarding Plaintiff's separation if requested by the agency and may be required to report some or all of these payments to that agency.

3. <u>SETTLEMENT SUMMARY:</u> In exchange for and in consideration of the Releases and promises of Plaintiff in this Agreement, Defendant agrees to pay a total sum of six thousand five hundred and 00/100 dollars ($6,500.00). The payments will be tendered as follows:

   a. One (1) payment to Sigfredo Prieto in the gross amount of $1,000.00, to represent the unpaid wages claim. An IRS Form 1099 will be issued to Plaintiff for this amount. Plaintiff must provide a fully completed and executed IRS Form W-9 to counsel for Defendant along with the executed Agreement; and

   b. One (1) payment to Sigfredo Prieto in the gross amount of $1,000.00 as liquidated damages. An IRS Form 1099 will be issued to Plaintiff for this amount. Plaintiff

      must provide a fully completed and executed IRS Form W-9 to counsel for Defendant along with the executed Agreement; and

  c. One (1) payment to Lee Law, PLLC in the amount of $4,500.00, representing attorneys' fees and costs for which separate IRS Forms 1099 shall issue to Lee Law, PLLC. Counsel must provide a fully completed and executed IRS Form W-9 to counsel for Defendant along with the executed Agreement.

*Plaintiff is aware of and agrees with, the number of attorneys' fees and costs to be paid to Plaintiff's counsel for representing his interest in this matter.*

  4. <u>DELIVERY OF SETTLEMENT SUM.</u> The settlement will be delivered to Plaintiff's counsel within 15 calendar days after all of the following events occur: (1) dismissal with prejudice of Plaintiff's claims in the Lawsuit; (2) Plaintiff's delivery of an IRS form W-9 to Defendant's counsel; and (3) Plaintiff's counsel's delivery of an IRS form W-9 to Defendant's counsel.

  5. <u>BASIS OF PAYMENT.</u> Plaintiff understands and acknowledges that the payments specified in this section were issued based on Plaintiff's agreement to execute this Agreement, including the Mutual Release of claims contained herein, and Plaintiff's fulfillment of the promises contained herein.

  6. <u>TAXABILITY.</u> Defendant makes no representation as to the taxability of the amounts paid to Plaintiff. Plaintiff agrees to pay federal or state taxes, if any, which are required by law to be paid with respect to this settlement. Moreover, Plaintiff agrees to indemnify Defendant and hold them harmless from any interest, taxes or penalties

assessed against it by any governmental agency as a result of the non-payment of taxes on any amounts paid to Plaintiff under the terms of this Agreement.

7. NO ADMISSION. Neither this Agreement nor the furnishing of the considerations for this Agreement shall be deemed or construed at any time for any purpose as an admission by the Released Party of any liability, unlawful conduct of any kind or violation by the Released Party of the FLSA, and any and all other applicable state, federal, county, or local ordinances, statutes or regulations.

8. OPPORTUNITY TO REVIEW. Plaintiff acknowledges that Plaintiff is aware that Plaintiff is giving up all wage claims and all other claims Plaintiff may have against the Released Party. Plaintiff acknowledges that Plaintiff has been advised in writing to consult with an attorney and has had the opportunity to seek legal advice before executing this Agreement. Plaintiff signs this Agreement voluntarily. The Parties agree and acknowledge that this Agreement was drafted by all Parties and their counsel where applicable. The language of this Agreement shall be construed as a whole, according to its fair meaning, and not strictly for or against either Party.

9. NO REHIRE. Plaintiff agrees that, subsequent to his execution of this Agreement, he shall not be eligible for rehire by the Defendant, or any of its subsidiaries, affiliates, parent companies, or other related entities, and shall not apply for any position with the Defendant subsequent to the effective date of the Agreement.

10. SEVERABILITY. Except as set forth below, should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction,

such that it cannot be modified to be enforceable, excluding the release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect except for sections 2 and 3, *supra*.

11. <u>VENUE AND GOVERNING LAW.</u> This Agreement shall be governed by the laws of the United States of America without regard to its conflict of laws provision. In the event of any action arising hereunder, venue shall be proper in the federal or state courts located within Hillsborough County, Florida.

12. <u>ENTIRE AGREEMENT.</u> This Agreement sets forth the entire agreement between Plaintiff and Defendant as to settlement of the Plaintiff's wage and FLSA claims asserted in this case. Plaintiff acknowledges that Plaintiff has not relied on any representations, promises, or agreements of any kind made to Plaintiff in connection with the decision to sign this Agreement, except those set forth in this Agreement.

13. <u>EXECUTION IN COUNTERPARTS.</u> This Agreement may be executed in any number of counterparts, each of which shall be considered an original. All the counterparts together shall constitute one and the same instrument.

THE SIGNATORIES HAVE CAREFULLY READ THIS ENTIRE SETTLEMENT AGREEMENT AND RELEASE OF FLSA CLAIMS. THE PARTIES HAVE EITHER BEEN REPRESENTED BY COUNSEL THROUGHOUT THE NEGOTIATION OF THIS AGREEMENT AND HAVE CONSULTED WITH THEIR ATTORNEYS BEFORE SIGNING THIS AGREEMENT OR HAVE BEEN PROVIDED THE OPPORTUNITY TO SECURE COUNSEL TO ADVISE ON THIS AGREEMENT. THIS PARTIES FULLY

www.spirelawfirm.com
Employment Attorneys

UNDERSTAND THE FINAL AND BINDING EFFECT OF THIS AGREEMENT. THE ONLY PROMISES OR REPRESENTATIONS MADE TO ANY SIGNATORY ABOUT THIS AGREEMENT ARE CONTAINED IN THIS AGREEMENT.

HAVING ELECTED TO EXECUTE THIS SETTLEMENT AGREEMENT AND RELEASE OF WAGE CLAIMS, TO FULFILL THE PROMISES SET FORTH HEREIN, AND TO RECEIVE THEREBY THE SETTLEMENT SUM AND BENEFITS SET FORTH IN PARAGRAPH 3 ABOVE, PLAINTIFF FREELY AND KNOWINGLY AND AFTER DUE CONSIDERATION, ENTERS INTO THIS SETTLEMENT AGREEMENT AND RELEASE OF WAGE CLAIMS INTENDING TO WAIVE, SETTLE AND RELEASE THE FLSA CLAIMS PLAINTIFF HAS OR MIGHT HAVE AGAINST RELEASED PARTIES.

THE PARTIES ARE SIGNING THIS AGREEMENT VOLUNTARILY AND KNOWINGLY.

Dated: 4/14/21

PINTOTRANSPORT, INC.

Sign: _____

Name: Giovanni Pinto

Title: PRESIDENT

_____
GIOVANNI PINTO

4/14/21
_____
Date

_____
SIGFREDO PRIETO

April 9, 2021
_____
Date

www.spirelawfirm.com
Employment Attorneys